492 P.2d 761

Louisa HAVIER, Surviving wife, on behalf of herself and the surviving children, Ione Havier, et al., Appellant,

v.

Joe PARTIN and Jane Doe Partin, husband and wife, et al., Appellees.

No. 2 CA–CIV 1019.

Court of Appeals of Arizona, Division 2.

Jan. 20, 1972.

Rehearing Denied Feb. 24, 1972.

Whitehill, Berger, Gin & Karp, P. C., Tucson, by David D. West, for appellant.

Jack M. Anderson, Phoenix, for appellees.

KRUCKER, Chief Judge.

Plaintiff-appellant is here appealing a denial of the motion for a new trial after a jury verdict for defendants in this wrongful death action.

Briefly, the facts are as follows. On February 1, 1969, in the evening, defendant, Joe Partin, a deputy sheriff of Pinal County, on routine patrol in Maricopa, Arizona, arrived at the Akchin Bar. While inside the bar, Deputy Partin observed defendant Leonard Juan, whom he had previously arrested for a misdemeanor and whom he knew to be a minor, approach the deceased and exit the bar with him. Outside, Deputy Partin observed Juan give some money to the deceased who then reentered the bar and purchased a six-pack of beer. Observing the deceased give the six-pack to Juan, Deputy Partin placed both individuals under arrest and put them in the back seat of his patrol car for transportation to the jail.

Upon reaching the jail, Deputy Partin opened the back door of the car and pulled defendant Juan outside. Deceased, at this time, shoved the deputy into Juan and ran off into the night. At the same time Juan began struggling with the officer but was unable to escape. Deputy Partin yelled at the deceased to stop and, this having no effect, he pulled his revolver to fire a warning shot. He raised his cocked revolver while still scuffling with defendant Juan. As the deputy was about to fire a warning shot into the air, Juan struck the deputy's arm bringing the pistol down against the patrol car and causing the gun to discharge. The bullet struck the deceased and he died a short time thereafter.

Deceased's widow filed a complaint for the wrongful death of her husband. All defendants filed answers to the complaint except defendant Leonard Juan against whom default was entered on March 18, 1970. Following a jury verdict and judgment for the defendants, plaintiff's motion for a new trial was denied and this appeal followed.

Plaintiff appeals on the basis of two prejudicial errors allegedly committed by the trial court, namely:

1. Refusing to give Plaintiff's Requested Jury Instructions Nos. 20–24, which instructions set forth the duty of the deputy in arresting the deceased and the amount of force which could lawfully be used by the deputy to capture a fleeing misdemeanant.

2. Refusing plaintiff's request at trial to examine defendant Leonard Juan through the use of leading questions as permitted in Rule 43(g), Arizona Rules of Civil Procedure, 16 A.R.S.

## JURY INSTRUCTIONS

Appellant argues that the trial court erred in refusing to give plaintiff's requested instructions Nos. 20–24:

"PLAINTIFFS' REQUESTED
INSTRUCTION NO. 20

It may become necessary for you to consider in your deliberations certain laws of this State which were in effect at the time of the death of Richard Havier. I will read them as follows:

Arizona Revised Statutes § 13–1401–A. provides: 'An arrest is made by an actual restraint of the person to be arrested, or by his submission to the custody of the person making the arrest.'

Arizona Revised Statutes § 13–401B. provides: 'No unnecessary or unreasonable force shall be used in making an arrest, and the person arrested shall not be subject to any greater restraint than necessary for his detention.'

Arizona Revised Statutes § 13–1416A. provides: 'If a person lawfully arrested

escapes, the person from whose custody he escaped may immediately pursue and retake him without a warrant at any time and in any place within the state.'

Arizona Revised Statutes § 13–1416B. provides: 'To retake the person escaping, the person from whose custody he escaped who is lawfully pursuing may use the same means as are authorized for an arrest.' "

### "PLAINTIFFS' REQUESTED INSTRUCTION NO. 21

You are instructed that it was the duty of Deputy Partin to arrest Richard Havier, who had committed a misdemeanor in his presence. It was not necessarily his duty to arrest him immediately. It was his duty also not to inflict bodily harm or death upon Richard Havier, in order to effect the arrest. It is better that Richard Havier should escape arrest than to cause injury or death to be inflicted for a misdemeanor."

### "PLAINTIFFS' REQUESTED INSTRUCTION NO. 22

You are instructed that to prevent an an escape of a man arrested for a misdemeanor such as furnishing liquor to a minor, if the man runs, the officer has no right even to shoot at him, but it is his duty to get other persons to help him.

That is to say, he may summon assistance to accomplish the arrest without inflicting injury or death."

### "PLAINTIFFS' REQUESTED INSTRUCTION NO. 23

You are instructed that a Law Enforcement Officer cannot properly fire a gun, with no intent to wound or kill, pointed in the range of one who flees to avoid arrest for a misdemeanor although it may appear that he can never take him otherwise."

### "PLAINTIFFS' REQUESTED INSTRUCTION NO. 24

You are further instructed that an officer has no right to proceed to the extremity of shedding blood in arresting, or in preventing the escape of one whom he has arrested, for a misdemeanor, even though the offender cannot be taken otherwise."

Appellant argues that the five instructions refused by the court comprised a definition of defendant's duty and that without this definition the jury would have found it impossible to determine if defendant had been negligent in breaching the duty.

Appellees argue that the instructions were properly refused as inapplicable to the present situation since they all deal with the *intentional* use of excessive force.

With regard to arrest of a misdemeanant by a police officer, it is stated in 5 Am. Jur.2d, Arrest § 83:

"As a general rule, in the case of a misdemeanor, an officer has no right, except in self-defense, to shoot or kill the offender in attempting to arrest him. Accordingly, where one whom he seeks to arrest for misdemeanor flees, the officer is not justified in shooting, whether his purpose is to kill the fugitive or merely to check his flight, even if he cannot otherwise be taken. The officer in such a case will be civilly liable to the offender if he wounds him, and he may also be liable in damages if he wounds another. (Footnotes omitted)"

The rule is the same whether the misdemeanant is fleeing from arrest or to escape from custody. 6 C.J.S. Arrest § 13(c), p. 614.

The Arizona Supreme Court in Robertson v. Territory, 13 Ariz. 10, 108 P. 217 (1910), distinguished the rights of an officer arresting a felon and one arresting a misdemeanant:

"[A] misdemeanor being a lesser grade of crime, *it is the duty of the officer while making the arrest not to inflict unnecessary bodily harm or death upon the person whom he is arresting. . . .*" (Emphasis supplied) 13 Ariz. at 15, 108 P. at 219.

The same rule was again approved in Harding v. State, 26 Ariz. 334, 225 P. 482 (1924),

under slightly different circumstances. Both of these cases were similar in being criminal prosecutions and were unlike the case before the court in that respect. While we think the nature of the subsequent action to have no effect upon the arresting officer's duty, we agree with appellees that the case before this court is clearly distinguished from *Robertson* and *Harding*, supra, by the unintentional discharge of the firearm in this case. The duty required of the officer is that he not *intentionally* inflict unnecessary bodily harm or death on the fleeing misdemeanant. *Robertson* and *Harding*, and Wimberly v. Paterson, 75 N.J.Super. 584, 183 A.2d 691 (1962), cited by appellant in support of the officer's liability for any "excessive force" used in arresting a misdemeanant, are all cases of intentional use of firearms. The deceased was either shot intentionally (*Robertson*) or by the ricochet of a shot fired at the tires of an automobile (*Harding*), or by a "warning" shot which fatally wounded the deceased.

The evidence before this court indicates that the shot which struck the deceased was fired unintentionally, resulting from Juan's striking the deputy's arm. Under these circumstances, plaintiff's instruction No. 8, which was read to the jury, seems appropriate:

### "PLAINTIFFS' REQUESTED INSTRUCTION NO. 8

Negligence is lack of ordinary care. It is a failure to exercise that degree of care which a reasonable, prudent, or careful law enforcement officer would have exercised under the same circumstances. Negligence may arise from doing an act which a reasonable, prudent, or careful law enforcement officer would not do under the same circumstances, or from failing to do an act which a reasonable, prudent, or careful law enforcement officer would do under the same circumstances."

An additional instruction similar to instruction No. 3.41 of the California Jury Instructions Civil (BAJI, 5th Ed., 1969), might have properly been given.

"BAJI 3.41. *Specific Application of Duty in Dangerous Activity*

Because of the great danger involved in the [use of firearms] a person of ordinary prudence will exercise extreme caution when engaged in such an activity."

However, no such instruction was offered by the plaintiff-appellant and it was certainly not fundamental error that the court failed to include such an instruction.

We find no error by the trial court in refusing to give the instructions offered by the plaintiff-appellant.

### REFUSAL TO PERMIT PLAINTIFF TO EXAMINE LEONARD JUAN BY LEADING QUESTIONS

During the course of the trial, Leonard Juan was called as a witness by the plaintiff. The trial court refused to allow plaintiff's counsel to ask leading questions of this witness. Appellant contends that Juan was an adverse party and was subject to cross-examination under Rule 43(g), Rules of Civil Procedure, 16 A.R.S.:

"43(g) *Scope of examination and cross-examination.* A witness may be cross-examined on any matter material to the action. A party may interrogate an unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party."

or, in the alternative, that Juan was subject to cross-examination as an adverse or hostile witness. Appellant argues that this refusal to allow leading questions of Juan was prejudicial because it prevented plaintiff's counsel from bringing out certain facts favorable to plaintiff which had previously

been brought out in Juan's deposition. Specifically, these facts, according to appellant, would suggest that the deputy was lowering his gun toward the deceased when Juan struck the deputy's arm.

The court has examined Juan's testimony at the trial and compared it with that of the deposition. The disparity between the two series of responses seems to this court more one of form than of substance. Whatever the difference in the language used, the image created in both instances is one of the deputy's lowering his arm and of Juan striking it because he thought the deputy was going to shoot the deceased. Because we find no prejudice to plaintiff in this regard, we shall discuss the issue no further.

For the foregoing reasons, the judgment of the trial court is affirmed.

HOWARD and HATHAWAY, JJ., concur.